Florine Hollis DEAN, Appellant,

v.

Vera WILBUR, Appellee.

No. 720.

Court of Civil Appeals of Texas,
Corpus Christi.

Sept. 7, 1972.

Daniel E. Hayes, Bay City, for appellant.

Vernon L. Harrison, Jr., Bay City, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from an order of the district court granting a temporary injunction in favor of Vera Wilbur, appellee, permitting her ingress and egress over appellant's property, consisting of 28.463 acres of land in Matagorda County, Texas, and prohibiting appellant from interfering with such ingress and egress along a path or route described in the judgment. Findings of fact or conclusions of law were not requested nor filed.

The first amended original petition of Vera Wilbur, plaintiff below, alleged in substance the following: that she is the owner of 40 acres of land, more or less out of the Tone & Jamison League, abstract No. 94, Matagorda County, Texas, as assigned to Vera Wilbur in the Report of Commissioners in Cause Number 859, Re: Estate of T. J. Clements, recorded in Volume T, Page 444 of Probate Minute Records of Matagorda County, Texas; that appellant is the owner of a parcel of land which adjoins appellee's above-described tract on its southeast boundary; that appellant's predecessor in title, Sarah Ellen Hollis, was awarded 170 acres described as Tract 4 in the Report of the

Commissioners in the Estate of T. J. Clements, hereinabove-mentioned; that appellee has peacefully and uninterruptedly exercised a right of ingress and egress to her said land over an old road which runs over appellant's above-described parcel of land since the original partition of the T. J. Clements Estate in 1934; that in the spring of 1971 appellant erected a fence across the aforementioned road and about June 1, 1971 appellant placed a lock on a gate on said road and denied appellee access to her 40 acre tract of land. Appellee further alleged that she has a right to use the road since its existence was well known at the time of the partition of the T. J. Clements Estate in 1934, asserting an implied easement appurtenant. However, appellee further alleged that if the court found that no such right existed, then she had an easement by prescription because of nearly 30 years of uninterrupted use of the road; and pleading further, appellee alleged that in any event she was entitled to an easement over appellant's land because appellee has no other access to her property and a right of way over appellant's property is the nearest and only feasible route to a public road. Appellee further alleged that she maintains cattle and other operations for gain on her 40 acre tract and had been damaged by the wrongful action of appellant in excess of $1,000.00 and further damages were accruing daily. Appellee prayed for a temporary restraining order and after hearings for a temporary and permanent injunction. This appeal involves only the granting of a temporary injunction.

Appellant, Florine Hollis Dean, asserts two points of error reading as follows:

### "First Point of Error

The trial court abused its discretion in granting the temporary injunction because its issuance is useless and unenforceable and accomplishes none of its intended objectives because appellant's land is isolated from access to any public road.

### Second Point of Error

The trial court erred in granting the temporary injunction because there is insufficient evidence to establish any easement or easements, as the same are described in appellee's pleadings."

The evidence consists of the testimony of Mr. Ira Clements, Mrs. Florine Hollis Dean, Mrs. Vera Wilbur (by deposition) and some documentary evidence, particularly maps and aerial photographs of the area involved.

The material testimony of Mr. Ira Clements was in part as follows: His father was Mr. T. J. Clements, who at one time owned all of the properties directly involved in this suit and who died in about 1932. Mrs. Vera Wilbur, appellee, is a sister to Mr. Ira Clements, and Mrs. Florine Hollis Dean, appellant, is his niece. Mr. Ira Clements further testified that he had been acquainted with the properties in question since November 1917 when his father bought the land. At that time there were certain roadways across the land which were used by his father and other people for access to various parts thereof. The witness testified concerning a map (P. Ex. 1) of Matagorda County, Texas dated June 1932, revised in 1936, as well as other maps or plats. In particular Mr. Clements pointed out that the map (P. Ex. 1) showed a road that ran through various tracts of land, one belonging to Ira Clements (designated as Tract No. 1, parcel A, 52.69 acres on another exhibit), another tract of 50 acres belonging to Mrs. Wilbur, the Hollis tract (being shown on another exhibit as Tract No. 4 belonging to Sarah Ellen Hollis, containing 170.78 acres), the 40 acre tract belonging to Mrs. Vera Wilbur (the tract primarily involved on the question of ingress and egress), the "Harper" tract (probably intended to be the "Harklus" tract as shown on the exhibits) and another tract of 40 acres, referred to as Tract No. 1, Parcel B, belonging to Ira Clements, and "this was the only way we had to get to our pieces of land". Mr. Ira Clements said that the road shown on the

map (P. Ex. 1) was there in 1917, but there had been some changes in it since Highway 521 had been changed in about 1955. The principal change referred to appears to be that for a short distance the old road had formerly meandered on to an adjoining tract (the Christi land) and then returned to the Hollis tract; but after Highway 521 was changed it furnished access directly to the Hollis tract. However, Mr. Ira Clements said that the old road was never closed nor was Highway 521 closed up to the Hollis land. He further testified that he had helped Mrs. Vera Wilbur, his sister, to keep up her place (the 40 acre tract in question) and had used the old road since the death of his father, in 1932, and the partition of his father's estate in about 1934, until the fence in question was put up in about the early part of 1971. Mr. Clements said he had acquired an easement from Mrs. Hollis which was located west or northwest from the other properties. He said he used the last-mentioned easement to get to his own land (Ira Clements, Tract No. 1, Parcel B) but that he also continued to use the old road (which ran across appellant's land) to get to the land of Mrs. Vera Wilbur until the fence was built in 1971. Mr. Clements was asked a number of questions concerning locations and routes shown on various maps, but it is very difficult to follow much of such testimony because of the generality of the words used and the lack of specific designations in the testimony which can be directly connected with the exhibits. However, it is clear that Mr. Clements testified that prior to the erection of the fence in 1971 he generally used the old road and followed the route of a slough which was identified on the maps, photographs and by the other evidence.

Mrs. Florine Hollis Dean testified in part as follows: She first knew that she was going to acquire some of the property involved in about 1965. Her grandmother had executed a deed of trust which was left with a bank so that the beneficiaries would later acquire their interests. Mrs. Dean, who was thirty-two years of age at the time of the trial in 1972, said she had gone down to the Clements property off and on all her life. In 1965, when she was generally aware of approximately what was to be done with the property (Tract 4 of the T. J. Clements Estate known as the Sarah Ellen Hollis tract), she looked at the land. She identified a survey plat (D.Ex. 2) prepared July 16, 1965 and identified Tract No. 5 as belonging to her. At its northwest corner that Tract (No. 5) adjoined the southeast portion of the Vera Wilbur 40 acre tract here involved. Mrs. Dean drew pencil lines on the plat locating the slough which ran from the Vera Wilbur Tract No. 2, Parcel A, 50 acres, south-ward for a short distance almost reaching Highway 521, then turning generally northwestward across tracts 6 and 5 (Mrs. Dean's tract) to the Vera Wilbur Tract No. 2, Parcel B, 40 acres, (the tract here involved), and across the Harklus tract and almost across the Ira Clements, Tract No. 1, Parcel B, 40 acres. Mrs. Dean also identified and testified concerning an aerial photograph (D.Ex.3) of the area. She particularly identified several points or areas shown on the photograph. She testified that there was nothing to prevent or obstruct a person from driving from Highway 521 to the gate on her property, which she said was locked whenever she went down there. Mrs. Dean also testified generally concerning the arrangements of the fences and gates in the area.

Mrs. Vera Wilbur testified by deposition offered by appellant and in response to questions propounded by appellant in part as follows: She was not claiming an easement through property other than that of appellant, i.e., Lot or Tract No. 5 of the land partitioned by Sarah Hollis. Mrs. Wilbur said she had an easement by virtue of use, not by writing; that she and her sister Sarah Hollis got along fine and while the latter was alive she allowed Mrs. Wilbur to cross her land; that Sarah Hol-

lis knew Mrs. Wilbur was crossing her land and never told her not to do so; nor did Sarah Hollis ever accuse Mrs. Wilbur of trespassing. Mrs. Wilbur testified that she felt she had Sarah Hollis' permission to cross her property.

The rules applicable to this type of proceeding are stated by our Supreme Court in Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549 (1953), wherein the court held in part as follows:

"In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. James v. E. Weinstein & Sons, Tex.Com. App., 12 S.W.2d 959, 960. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. Rosenfield v. Seifert, Tex.Civ.App., 270 S.W. 220, 223; Nagy v. Bennett, Tex.Civ.App., 24 S.W.2d 778, 781; High on Injunctions, 4th Edition, Vol. I, Sec. 5, p. 8. If the party enjoined prevails on a final trial of the case he finds protection against the improvident granting of the writ and consequent loss in the interim in the applicant's bond. Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460, 462. There is no abuse of discretion in the issuance of a writ if the petition alleges a cause of action and the evidence adduced tends to sustain it.

Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235.

\*    \*    \*    \*    \*    \*

The 'status quo' to be preserved by temporary injunction is 'the last, actual, peaceable, noncontested status which preceded the pending controversy.' Hartley v. Brady, Tex.Civ.App., 114 S.W.2d 406, 408; Dickard v. Crawley, Tex.Civ.App., 230 S.W.2d 833, 834. . . ."

One theory of recovery relied on by appellee is that of an implied easement appurtenant. In the case of Fender v. Schaded, 420 S.W.2d 468, 471, 472 (Tex. Civ.App., Tyler, 1967, wr.ref. n.r.e.) the court held in part as follows:

"In discussing the principle of an easement appurtenant, the Supreme Court of this state in Ulbricht v. Friedsam, 159 Tex. 607, 325 S.W.2d 669, said:

'\*    \*    \*    The correct rule of law governing this phase of this case is stated in 28 C.J.S. Easements § 31, p. 687, et seq., as follows:

"Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication." '

The case of Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, (Tex.Sup.Ct., 1963), cited by both parties, lays down four essential elements necessary to the establishment of an implied easement appurtenant, to-wit: (1) there must have originally been unity of ownership of the dominant and servient estate; (2) the use of the easement must have been ap-

parent at the time of the grant; (3) the use of the easement until the time of the grant must have been continuous and so conspicuous as to indicate permanence; and (4) the easement must be reasonably necessary to a fair and enjoyable use of the dominant estate."

■ Under the rules applicable to this type of appeal we believe that appellant's points are without merit. Appellant's point number two is a "no evidence" point. We, therefore, must consider the evidence in a light most favorable to the implied findings of the court which sustain the judgment. The trial court was authorized to find that appellee had a probable right (an implied easement appurtenant) and that there was a probable injury. Appellant's first point is primarily based on the argument that appellee must go across tracts of land belonging to other persons in order to have a complete pathway from the public road to her property. The present record does not show that appellee's claimed roadway is obstructed or objected to by such owners and the argument is immaterial at this time. Upon oral argument of this case it was indicated that other controversies between appellee and owners of adjoining or nearby tracts may have arisen since the trial of this cause. However, such questions are not before the Court on the instant appeal.

■ Under the rules stated in *Transport*, the action of the trial court here in granting a temporary injunction for the purpose of preservation of the status quo of the subject matter of the suit pending a final trial of the case on the merits or until further order of the court was within the discretion of the trial court and a clear abuse of that discretion is not established. The material issues involved in this controversy are still to be determined at the trial on the merits.

The judgment of the trial court is affirmed.